Filed 6/11/21  P. v. Walker CA4/2

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E074918 |
| v. | (Super.Ct.No. CR40606) |
| DAVID EARL WALKER, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Ronald L. Taylor, Judge. (Retired judge of the Riverside Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Reversed and remanded with directions.

Thomas Owen, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland, Alana R.

1

Butler and James H. Flaherty III, Deputy Attorneys General, for Plaintiff and Respondent.

In 1993, this court affirmed defendant and appellant David Earl Walker's convictions of first degree felony murder and robbery and affirmed his state prison sentence of three years, plus 25 years to life. Over 20 years later, Walker petitioned the superior court to vacate his murder conviction pursuant to Penal Code[1] section 1170.95, a resentencing statute enacted as part of Senate Bill No. 1437 (2017-2018 Reg. Sess.). In a nutshell, that bill limited the offense of murder under the felony-murder rule to defendants who: (1) are the actual killer; (2) are not the actual killer, but who share the killer's intent to kill, and aid and abet in the killing; or (3) are a major participant in an enumerated felony and who act with reckless indifference to human life; and it eliminated the offense of murder under the natural and probable consequences doctrine. (*People v. Gentile* (2020) 10 Cal.5th 830, 846, 848.) The superior court agreed with the People, as represented by the district attorney, that Walker's petition should be dismissed because the record of his conviction established he was the actual killer and/or he was a major participant in the robbery and acted with reckless indifference for human life.

On appeal, Walker argues that the facts readily available in the record of conviction would not support a conviction for first degree murder under either theory articulated by the People in opposition to his petition. The People, as represented by the

---

[1] Unless otherwise indicated, all additional statutory references are to the Penal Code.

Attorney General, concede we must reverse and remand for the superior court to issue an order to show cause and conduct an evidentiary hearing on the petition.

We hold that the superior court exceeded the limited scope of the inquiry under section 1170.95, subdivision (c), into whether a petitioner makes a prima facie case for relief. Therefore, we reverse and remand for the superior court to issue an order to show cause and set an evidentiary hearing on the petition.

## I.

## FACTS

We take our summary of facts from this court's nonpublished decision in Walker's direct appeal in *People v. Collins et al.* (Dec. 7, 1993, E010796).

"According to the evidence presented at trial, in the evening of July 3, 1991, defendants [Walker and Brandon Tyrone Collins], along with 15 to 20 other people, were in the front yard of a home in Banning where they were talking, drinking and listening to music when [the] 77-year-old [victim[2]] drove up and stopped his car in front of the house. [D.M.], [J.H.] and [A.H.] lived together in the house (along with several other people, including [D.M.]'s grandmother) and were in the front yard on the evening in question. All three women testified at trial and stated, in pertinent part, that [the victim] came by the house almost every day to see [L.], another woman who apparently also lived at the house.

---

[2] We have omitted the full names of victims and witnesses. (See Cal. Rules of Court, rule 8.90(b)(4), (11); Cal. Style Manual (4th ed. 2000) § 5:9, pp. 179-180, § 5:12, p. 181.)

"According to [D.M.], after [the victim] stopped his car by the curb, he called [her] over and asked her whether [L.] was home. [D.M.] testified that she sat in the passenger seat of [the victim's] car, apparently with the door open, and told [him] [L.] was in jail. While [D.M.] was in the car talking to [the victim], defendants walked up to the driver's side where Collins said to [the victim] 'something like "give me your money."' According to [D.M.], [the victim] started his car and tried to drive away, but before he could do so, Collins reached into the car through the driver's side window and turned off the ignition. At the same time, Walker apparently also reached inside the car and 'put it in park.' [D.M.] testified Collins hit [the victim] more than once (although she did not know exactly how many times) and tried to take [the victim's] wallets which apparently were in [the victim's] rear pants pockets. While [D.M.] was trying to help [the victim], someone hit [her] and knocked her out of the car, onto the ground. [She] did not see who hit her. From where she was lying next to the passenger side of the car, [D.M.] could see [the victim] 'up in the air,' apparently held by someone. [She] did not see how [the victim] was taken out of the car or who held him. Then 'they dropped' [the victim] and [his] head hit the ground. [D.M.]'s sister called the police who arrived a short time later, along with the paramedics. When interviewed by the police, [D.M.], and everyone else present at the time of the incident, identified Collins and Walker as the people 'who did this' to [the victim].

"[J.H.] testified, in pertinent part, that she was at the house on the night in question. Before [the victim] drove up, [J.H.] was standing in the driveway near Collins and Walker when 'they mentioned about robbing somebody, that somebody was going to

4

give them some money . . . .' Specifically, [she] testified that she heard Collins say 'he was going to get some money from somebody, if it had to be his mother, he was going to get some money.' After [the victim] drove up to the house, [J.H.] saw Collins and Walker go over to [the victim's] car. Collins reached in the window and turned off the ignition. [J.H.] remembered seeing Collins lean in through the driver's side window and hit [the victim] while telling [him] to hand over his money. According to [J.H.], while Collins was hitting [the victim], Walker 'was standing there for a minute. At first he tried to pull [Collins] off, then he just stood there.' [J.H.] 'hollered' at them to stop hitting [the victim] because 'he was too old . . . for them to be hitting him, jumping on him like that.' According to [J.H.], Collins said, 'Fuck him.' When [the victim] told Collins that [he] did not have any money, Collins said [the victim] was lying and pulled [him] through the driver's side window and out of the car. Walker (whom [J.H.] referred to by the nickname 'Papa') held [the victim], apparently under the arms and up off the ground, while Collins went through [the victim's] pockets. Collins took two wallets out of [the victim's] pants pockets, removed the money and threw the wallets on the street. After Collins got the wallets, [J.H.] heard Collins say 'he had the money and then Collins said, "Let him go." So they dropped him. So he [the victim] just like hit, hit the ground.' Both defendants then walked away together down the street. [J.H.] called the paramedics.

"[A.H.] . . . testified she was present on the night in question, along with [J.H.], [D.M.] and others. Just before [the victim] drove up to the house, [A.H.] heard both defendants say they were going to rob somebody. [A.H.] said she saw Collins and

5

Walker go over to [the victim's] car and she heard Collins tell [the victim] to give Collins his money. When [the victim] said he did not have any money, Collins started hitting [him]. Unlike [J.H.] and [D.M.] who testified that Walker initially stood there while Collins hit [the victim], [A.H.] stated Walker '[w]as like trying to get the man's wallet out of his pants.' [She] also testified Walker or Collins (she did not know which one) threw [the victim's] keys out of the car and [she] picked them up and held them until she gave them to the police. According to [A.H.], Walker and Collins both pulled [the victim] out of the car 'and let him fall to the ground. And [the victim] hit his head real hard.' [A.H.] both saw and heard [the victim's] head hit the ground. [She] also saw one of the defendants kick [the victim] while he was on the ground but [she] did not know which defendant did the kicking. After both defendants ran away, [A.H.] went to see if [the victim] was hurt. According to [A.H.], [the victim] 'was making this little gurgling sound, and his eyes were all back in his head. He didn't say anything, just made a little sound.'

"When the police and paramedics arrived, they found [the victim] lying in the street next to his parked car. [The victim's] head was in a pool of blood. [He] died the next day. [T]he forensic pathologist who performed the autopsy[] expressed the opinion that [the victim] died from blunt head injuries. [The pathologist] also testified that bruising around [the victim's] eyes as well as on his arms, chest and neck, was consistent with [the victim] having been beaten around the face and kicked in the neck." (*People v. Collins et al.*, *supra*, E010796, fns. omitted.)

6

A jury found Walker guilty of first degree felony murder and robbery, and the trial court sentenced him to state prison for the middle term of three years for the robbery, stayed pursuant to section 645, and an indeterminate term of 25 years to life for the murder. On direct appeal, this court rejected Walker's various instructional and evidentiary claims of error, affirmed his convictions and sentence, but directed the trial court to amend the abstract of judgment to state the correct amount of custody credits Walker was entitled to. (*People v. Collins et al.*, *supra*, E010796.) The California Supreme Court denied review March 16, 1994, S037342.

II.

PROCEDURAL HISTORY

Effective January 1, 2019, Senate Bill No. 1437 amended sections 188 and 189 (Stats. 2018, ch. 1015, §§ 2, 3) to limit the application of the felony-murder rule to persons who: (1) are the actual killer; (2) are not the actual killer, but who share the killer's intent to kill, and aid and abet in the killing; or (3) are a major participant in an enumerated felony and who act with reckless indifference to human life; and it eliminated the offense of murder under the natural and probable consequences doctrine. (§§ 188, subd. (a)(3), 189, subd. (e)(1)-(3).) In addition, Senate Bill No. 1437 enacted section 1170.95 (Stats. 2018, ch. 1015, § 4), which permits persons previously convicted of first or second degree murder under the felony-murder rule or the natural and probable consequences doctrine, but who could not be so convicted after the amendments to sections 188 and 189 made by Senate Bill No. 1437, to petition the superior court to vacate their murder convictions and to resentence them on any remaining counts.

7

On January 8, 2019, Walker, acting as his own attorney, filed a petition for resentencing under section 1170.95. Using a check-box form, he alleged he had been charged with and convicted of first degree felony murder but that he could no longer be convicted of murder under that theory. Relevant here, Walker checked the boxes that indicated: "I was not the actual killer"; "I did not, with the intent to kill, aid, abet, counsel, command, induce, solicit, request, or assist the actual killer in the commission of murder in the first degree"; and "I was not a major participant in the felony **or** I did not act with reckless indifference to human life during the course of the crime or felony." He requested the court appoint counsel for him.

The district attorney filed an opposition requesting the superior court strike or deny the petition on the ground Senate Bill No. 1437 was unconstitutional. In the alternative, the district attorney argued the superior court should dismiss or summarily deny the petition and not issue an order to show cause because Walker could still be convicted of felony murder. According to the prosecutor, the superior court was not required to accept as true the mere allegations in the petition that were contradicted by facts in the record of conviction that demonstrate Walker was a major participant in the robbery who acted with reckless indifference to human life.

The superior court appointed counsel for Walker, and his attorney filed an opposition to the motion to strike and argued Senate Bill No. 1437 is constitutional.

At the continued hearing on Walker's petition, the district attorney argued the facts set forth in this court's prior opinion demonstrate the killing occurred during "a joint beating and a robbery." The prosecutor argued, "If he was not the actual killer, he was at

8

least a major participant [who acted] with reckless indifference." According to the prosecutor, "The facts show it was a robbery of a 77-year-old man who was sitting in his car. Mr. Walker held the victim, while others went through his pockets, then dropped the victim to the ground, at which point he hit his head and died in a pool of blood." Because Walker was "one of two actual killers," the prosecutor argued, "he's not qualified for relief." The superior court granted the district attorney's motion to dismiss the petition "for the reasons [the prosecutor] articulated for the record."[3]

III.

DISCUSSION

Upon receiving a petition under section 1170.95, "[t]he court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section." (§ 1170.95, subd. (c).) If, after having received a response from the prosecutor and any reply from the petitioner, the superior court concludes a prima facie showing for relief has been made, "the court shall issue an order to show cause" and conduct a hearing "to determine whether to vacate the murder conviction . . . ." (*Id.*, subds. (c), (d)(1).) If the record of conviction contains an express finding by a court or jury that the defendant "did not act with reckless indifference to human life or was not a major participant in the felony," the superior court must vacate

---

[3] The superior court did not expressly rule on the constitutionality of Senate Bill No. 1437. Like every other appellate court to address that issue in a published decision, this court has since rejected the same constitutional arguments made by the prosecutor in this case. (*People v. Johns* (2020) 50 Cal.App.5th 46; *People v. Lippert* (2020) 53 Cal.App.5th 304.) There is no dispute on appeal that the bill *is* constitutional, so we need not address the issue further.

9

the conviction and resentence the defendant.  (*Id*., subd. (d)(2).)  Otherwise, the

prosecutor has the burden of proving beyond a reasonable doubt that the defendant is

ineligible for relief, and both the prosecutor and the defendant "may rely on the record of

conviction or offer new or additional evidence to meet their respective burdens."  (*Id*.,

subd. (d)(3).)  And, if the prosecutor fails to meet his or her burden of proof, the superior

court shall vacate the murder conviction and resentence the defendant on any remaining

charges.  (*Ibid*.)

The courts have teased out of the language of section 1170.95 three distinct stages

of review a superior court must conduct before it may issue an order to show cause.  At

the first stage, the court must review the "facial sufficiency of the petition" to determine

whether it includes all the information required by section 1170.95, subdivision (b)(1);

and, if the court finds the petition is lacking, subdivision (b)(2) provides the court may

deny the petition without prejudice to the defendant filing a new one.  (*People v. Verdugo*

(2020) 44 Cal.App.5th 320, 327-328, review granted Mar. 18, 2020, S260493

(*Verdugo*).)  "Subdivision (c) [of section 1170.95] then prescribes two additional court

reviews before an order to show cause may issue, one made before any briefing to

determine whether the petitioner has made a prima facie showing he or she falls within

section 1170.95—that is, that the petitioner may be eligible for relief—and a second after

briefing by both sides to determine whether the petitioner has made a prima facie

showing he or she is entitled to relief."  (*Verdugo*, at p. 328.)  As this and other courts

have already concluded, the superior court may properly consider relevant portions of the

record of conviction, including a prior opinion in the defendant's direct appeal, when

deciding under the second review contemplated by subdivision (c) whether a defendant has made a prima facie case for relief.[4] (E.g., *People v. Palacios* (2020) 58 Cal.App.5th 845, 855-856, review granted Feb. 24, 2021, S266701; *People v. Law* (2020) 48 Cal.App.5th 811, 820-821, review granted July 8, 2020, S262490.)

Comparing the second, postbriefing review under section 1170.95, subdivision (c), "to the familiar decisionmaking process before issuance of an order to show cause in habeas corpus proceedings," *Verdugo* held the superior court is required to accept the allegations in the petition when making a preliminary assessment of whether the petitioner has made a prima facie case for relief if those facts are proven true. (*Verdugo*, *supra*, 44 Cal.App.5th at p. 328.) The court in *People v. Drayton* (2020) 47 Cal.App.5th 965 (*Drayton*) expanded upon *Verdugo*. Although *Drayton* agreed with the People that "habeas corpus procedures provide an imperfect analogy" to section 1170.95, the court nonetheless concluded habeas procedures are "sufficiently similar" with respect to the superior court's determination under section 1170.95, subdivision (c), whether the petition has made a prima facie showing of entitlement to relief. (*Drayton*, *supra*, 47 Cal.App.5th at p. 980.) Using habeas procedures as its guide, *Drayton* held the superior court is required to accept as true all facts stated in the petition, it may not evaluate the credibility of those facts or weigh evidence, and it must issue an order to show cause and conduct an evidentiary hearing, unless facts readily available in the

---

[4] The Supreme Court will decide that issue in *People v. Lewis* (2020) 43 Cal.App.5th 1128, review granted March 18, 2020, S260598.

11

record "conclusively refute" the facts alleged in the petition and establish the petitioner is not entitled to relief as a matter of law. (*Id*. at pp. 968, 980-981.)

*Drayton* held the nature of the inquiry at the prima facie review stage is very narrow. "The trial court should not evaluate the credibility of the petition's assertions, but it need not credit factual assertions that are untrue as a matter of law—for example, a petitioner's assertion that a particular conviction is eligible for relief where the crime is not listed in subdivision (a) of section 1170.95 as eligible for resentencing. Just as in habeas corpus, if the record 'contain[s] facts refuting the allegations made in the petition . . . the court is justified in making a credibility determination adverse to the petitioner.' [Citation.] However, this authority to make determinations without conducting an evidentiary hearing pursuant to section 1170.95, subd. (d) is limited to readily ascertainable facts from the record (such as the crime of conviction), rather than factfinding involving the weighing of evidence or the exercise of discretion (such as determining whether the petitioner showed reckless indifference to human life in the commission of the crime)." (*Drayton*, *supra*, 47 Cal.App.5th at p. 980.)

As here, the defendant in *Drayton* alleged in his petition that he had been convicted of felony murder but could no longer be so convicted because he was not a major participant in the underlying felony and did not act with reckless indifference for human life. (*Drayton*, *supra*, 47 Cal.App.5th at pp. 970, 981.) Also, as here, the jury in Drayton's trial made no findings that he was a major participant who acted with reckless indifference. But the superior court summarily denied the petition after it found the record of conviction—in particular, testimony at Drayton's preliminary examination—

12

established he was a major participant who acted with reckless indifference. (*Id*. at pp. 971-972, 981-982.) The appellate court held that was in error. "At this stage of the petition review process, governed by section 1170.95(c), the trial court should not have engaged in this factfinding without first issuing an order to show cause and allowing the parties to present evidence at a hearing, as described in section 1170.95, subdivision (d). Further, the *Banks* test, which governs the inquiry whether the defendant was a major participant in a felony necessarily requires the weighing of facts and drawing inferences. ([*People v.*] *Banks* [(2015)] 61 Cal.4th [788,] 803.) The question whether Drayton acted with reckless indifference is a similarly multifaceted inquiry. (See *People v. Clark* (2016) 63 Cal.4th 522, 622 . . . .) In making an assessment of the petitioner's prima facie showing, the trial court should not have evaluated and weighed the evidence but instead should have accepted petitioner's asserted facts as true." (*Drayton*, at p. 982.)

A split has since developed among the courts about the evidentiary standard the superior court applies during the postbriefing, prima facie review conducted under section 1170.95, subdivision (c). In *People v. Garcia* (2020) 57 Cal.App.5th 100 (*Garcia*), review granted February 10, 2021, S265692, the appellate court disagreed with *Drayton*. *Garcia* held that the superior court need not accept the allegations in the petition as true and may deny the petition without issuing an order to show cause, if the record of conviction contains *substantial evidence* demonstrating the petitioner has not

13

made a prima facie case for relief.[5] (*Garcia*, at pp. 110, 114-116.) Inter alia, *Garcia* rejected *Drayton*'s holding that the superior court must accept the facts alleged in the petition unless they are *conclusively* disproved by facts readily ascertainable in the record. (*Garcia*, at p. 116.)

But, our colleagues in the First Appellate District expressly rejected *Garcia*'s conclusion that the superior court may ignore the allegations in the petition and deny it without issuing an order to show cause if substantial evidence in the record of conviction shows the petitioner has not made a prima facie showing for relief.[6] (*People v. Duchine* (2021) 60 Cal.App.5th 798 (*Duchine*).) Instead, *Duchine* agreed with *Drayton* that the superior court must accept the allegations in the petition as true unless the record of conviction conclusively disproves those facts as a matter of law. (*Duchine*, at pp. 812-816.) "[W]e hold that the time for weighing and balancing and making findings on the ultimate issues arises at the evidentiary hearing stage rather than the prima facie stage, at least where the record is not dispositive on the factual issues. Thus, absent a record of conviction that conclusively establishes that the petitioner engaged in the requisite acts

---

[5] *Garcia* adopted the reasoning from *People v. Duke* (2020) 55 Cal.App.5th 113 (*Duke*), review granted January 13, 2021, S265309, that the burden of proof applicable during the evidentiary hearing is essentially the same as the standard of review on appeal, substantial evidence. (*Id*. at p. 123; see *Garcia*, *supra*, 57 Cal.App.5th at pp. 116-117.) The question posed by *Duke* is pending before the California Supreme Court.

[6] Recently, this court rejected *Garcia* and *Duke* to the extent those decisions held the beyond a reasonable doubt standard of proof applicable at the evidentiary hearing is essentially the same as the substantial evidence standard of review applicable on appeal. (*People v. Clements* (2021) 60 Cal.App.5th 597, 615-618, review granted Apr. 28, 2021, S267624.)

14

and had the requisite intent, the trial court should not question his evidence. The court may . . . consider the record of conviction at the prima facie stage, but may not evaluate the evidence, make credibility findings adverse to the petitioner, engage in factfinding or exercise discretion. (*Drayton*, *supra*, 47 Cal.App.5th at pp. 981-982.) The record should be consulted at the prima facie stage only to determine 'readily ascertainable facts,' such as the crime of conviction and findings on enhancements. Once the petitioner has made a prima facie showing, true factfinding should be reserved and exercised only after an order to show cause is issued and the parties are permitted to supplement the record with new evidence, including, if requested, through an evidentiary hearing. (*Id*. at pp. 980-981.)"[7] (*Duchine*, at p. 815.)

We agree with the reasoning from *Drayton*, *supra*, 47 Cal.App.5th 965 and conclude it controls here. Unless the readily ascertainable facts from the record of conviction establish, as a matter of law, that the petitioner could still be convicted of

---

[7] As of this writing, every other subsequent published decision has followed *Duchine*'s lead and rejected *Garcia*. (*People v. Aleo* (May 27, 2021, F080005) ___ Cal.App.5th ___ [2021 Cal.App. Lexis 445, *10-*15] [adopting the reasoning of *Duchine* and *Drayton*, and rejecting *Garcia*]; *People v. DeHuff* (2021) 63 Cal.App.5th 428, 438-442 [same]; *People v. Secrease* (2021) 63 Cal.App.5th 231, 246 [same]; *People v. Rivera* (2021) 62 Cal.App.5th 217, 230 [same].)

15

felony murder even after the amendments made to section 189,[8] the superior court may not engage in normal factfinding but must instead issue an order to show cause and conduct an evidentiary hearing. At that time, the court must weigh the evidence, make credibility determinations, and decide whether the prosecutor has proven beyond a reasonable doubt that the petitioner is guilty of felony murder as the actual killer or as a major participant in the underlying robbery who acted with reckless indifference for human life.

Here, the superior court did not accept as true Walker's allegation in his petition that he was not the actual killer. Instead, the court agreed with the district attorney that the record of conviction, in particular this court's prior decision, established he was "one of two actual killers." We accept the People's concession that the superior court erred by making such a finding. It does not appear the jury at Walker's trial made such a finding, and the superior court was not permitted at the prima facie review stage to reconcile conflicts in the evidence and make its finding that Walker was the actual killer.

In addition, we must conclude the superior court erred when it agreed with the district attorney that the record of conviction demonstrated Walker was a major participant who acted with reckless indifference to human life. As *Drayton* held, the

---

[8] For example, in *People v. Jones* (2020) 56 Cal.App.5th 474, 482, review granted January 27, 2021, S265854, this court held that the superior court may find a petitioner is not entitled to relief as a matter of law when the record of conviction contains a final, undisturbed special circumstance finding under section 190.2, subdivision (d), that demonstrates the jury expressly found the defendant was a major participant who acted with reckless indifference for human life. That issue is currently pending before the California Supreme Court. (*People v. Strong* (Mar. 10, 2021, S266606) ___ Cal.5th ___ [2021 Cal. Lexis 1701].)

multifactor analyses under *People v. Banks* (2015) 61 Cal.4th 788 and *People v. Clark* (2016) 63 Cal.4th 522—that necessarily involve careful weighing and balancing of evidence—are not properly conducted at the prima facie review stage but must be reserved for the evidentiary hearing.  (*Drayton*, *supra*, 47 Cal.App.5th at p. 982.)

Therefore, we conclude the superior court erred by summarily denying Walker's petition.

## IV.

## DISPOSITION

The order summarily denying Walker's petition is reversed.  On remand, the superior court shall issue an order to show cause and conduct an evidentiary hearing on the petition as contemplated by section 1170.95, subdivision (d).

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


McKINSTER_____
                                                                                            J.

We concur:


RAMIREZ_____
                    P. J.


MENETREZ_____
                    J.


17